Robert Harkins (California State Bar No. 179525)
robert.harkins@sedgwicklaw.com
SEDGWICK LLP
333 Bush Street, 30th Floor
San Ramon, CA  94104-2834
Telephone:    415.781.7900
Facsimile:    415.781.2635

Paul Cauley (Texas State Bar No. 4018900)
paul.cauley@sedgwicklaw.com
SEDGWICK LLP
1717 Main Street, 54th Fl.
Dallas, Texas 75201
Telephone:    469.227.8200
Facsimile:    469.227.8004

Attorneys for FIVE9 INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| NOBELBIZ, INC. | ) | CIV. ACTION NO.  6:12-CV-00243-LED |
| | ) | |
| Plaintiff, | ) | **FIVE9, INC.'S MOTION TO DISMISS,** |
| | ) | **OR, IN THE ALTERNATIVE, TO** |
| vs. | ) | **TRANSFER AND STAY** |
| | ) | **PROCEEDINGS REGARDING** |
| FIVE9, INC. | ) | **NOBELBIZ'S APPLICATION FOR** |
| | ) | **PRELIMINARY INJUNCTION** |
| Defendant. | ) | |
| | ) | |

TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND.........................................................................................2

III.    STATEMENT OF THE ISSUES TO BE DECIDED...........................................................4

IV.     ARGUMENT ...............................................................................................................5

        A.  The Complaint Should Be Dismissed for Improper Venue ..................................5

            1.   **Five9 Resides in the Northern District of California, Not in the Eastern
                 District of Texas** ...........................................................................................5

            2.   **Five9 Does Not Have A Regular And Established Place Of Business In This
                 District, and The Alleged Acts Of Infringement Do Not Occur In This District** 8

        B.  Alternatively, the Case Should Be Transferred to California ............................10

            1.   **The Court Should Exercise Its Authority To Transfer This Case To
                 California** ..................................................................................................10

            2.   **Private Interest Factors Favor Transfer**............................................................12

            3.   **The Public Factors Favor Transfer to the Northern District of California** ...17

            4.   **No Deference Should Be Given To Plaintiff's Choice Of Forum When, As
                 Here, the Suit is Not Filed in the Plaintiff's Residence**....................................21

            5.   **Plaintiff's Attempt To Forum Shop Should Not Succeed** ...............................22

V.      THE COURT SHOULD STAY NOBELBIZ'S APPLICATION FOR PRELIMINARY
        INJUNCTION..............................................................................................................22

VI.     CONCLUSION............................................................................................................23

TABLE OF AUTHORITIES

**Cases**

*Acceleron, LLC v. Egenera, Inc.*
   634 F. Supp. 2d 758 (E.D. Tex. 2009) ........................................................ 6

*Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*
   566 F.3d 1012 (Fed. Cir. 2009) .............................................................. 7

*Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*
   552 F.3d 1324 (Fed. Cir. 2008) .............................................................. 9

Burger King Corp. v. Rudzewicz
   471 U.S. 462 (1985) ...................................................................... 7, 8

Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed. Cir. 2008) .................................... 7, 8

*Colorquick, LLC v. Vistaprint Ltd. et al.*
   No. 6:09-cv-323, 2010 WL 5136050, at *7 (E.D. Tex. July 22, 2010) ................... 20

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*
   297 F.3d 1343 (Fed. Cir. 2002) ......................................................... 6, 10

*Elecs. for Imaging, Inc. v. Coyle*
   340 F.3d 1344 (Fed. Cir. 2003) .............................................................. 9

Goodyear Dunlop Tires Operations, S.A. v. Brown
   131 S. Ct. 2846 (2011) ................................................................. 6, 7, 8

Hanson v. Denckla
   357 U.S. 235 (1958) ......................................................................... 8

Helicopteros Nacionales de Columbia, S.A. v. Hall
   466 U.S. 408 (1984) ......................................................................... 6

*Hollyanne Corp. v. TFT, Inc.*
   199 F.2d 1304 (Fed. Cir. 1999) .............................................................. 9

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ................................ 13, 14, 16

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ...................... 19

*In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ..................... 12, 14, 18

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) ...................... passim

*In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004) (*Volkswagen I*) ............... 10, 12, 14

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (*Volkswagen II*) ......... passim

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*) ........... 16

*In re Zimmer Holdings, Inc.*
   809 F.3d 1378 (Fed. Cir. 2010) ........................................................ 20, 21

*Indus. Tech. Research Inst. v. LG Corp., et al.*
   Nos. 6:10cv628 LED-JDL, 6:10cv629 LED-JDL, 6:10cv630 LED-JDL, 6:10cv631 LED-JDL
   2012, WL 959346, at *2 (E.D. Tex. Feb. 13, 2012) ................................... 11

Case No. 6:12-CV-00243-LED

*Innovative Global Sys. LLC v. Onstar, LLC, et al.*, No. 6:10-cv-574, slip op. at 12 (E.D. Tex. Feb. 14, 2012) ................................................................................................................ 16, 17

LSI Indus. Inc. v. Hubbell Lighting, Inc.
   232 F.3d 1369 (Fed. Cir. 2000)................................................................................... 6, 7

*Morales v. Navieras de Puerto Rico*
   713 F. Supp. 711 (D.N.Y. 1989).............................................................................. 15, 16

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 U.S. Dist. LEXIS 7575 (E.D. Tex. Jan. 23, 2012) ........................................................................................ 12

*New Image, Inc. v. Travelers Indem. Co.*
   536 F.Supp. 478 (E.D. Pa. 1981) ................................................................................. 21

*Nuance Commc'ns, Inc. v. Abbyy Software House*
   626 F.3d 1222 (Fed. Cir. 2010)...................................................................................... 6

*O'Hopp v. Contifinancial Corp*
   88 F.Supp.2d 31 (E.D.N.Y. 2000) ................................................................................. 22

*On Semiconductor Corp., et al., v. Hynix Semiconductor, Inc., et al.*
   No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010)................................ 11

*Optimum Power Solutions, LLC v. Apple, Inc.*
   794 F.Supp.2d 696 (E.D. Tex. 2011)................................................................... 11, 15, 21

*Pacific Car and Foundry Co. v. Pence*
   403 F.2d 949 (9th Cir. 1968) ........................................................................................ 22

*Realtime Data, LLC v. Morgan Stanley, et al.*
   Nos. 6:09cv326-LED-JDL, 6:09-cv327-LED-JDL, 6:09cv333-LED-JDL, 2010 WL 4274576, at *3-5 (E.D. Tex. Oct. 28, 2010) .................................................................................... 20

*Reiffin v. Microsoft Corp.*
   104 F.Supp.2d 48, fn. 12 (D.D.C. 2000)........................................................................ 22

*Sipco, LLC v. Control4 Corp*, No. 6:10-cv-249, 2011 U.S. Dist. LEXIS 12435, at *6 (E.D. Tex. Feb. 8, 2011) .......................................................................................................... 16, 17

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372, 1375-76 (Fed. Cir. 2009) ...................................................................... 22

Touchcom, Inc. v. Bereskin & Parr
   574 F.3d 1403 (Fed. Cir. 2009) ...................................................................................... 8

*VE Holding Corp. v. Johnson Gas Appliance Co.*
   917 F.2d 1574 (Fed. Cir. 1990)....................................................................................... 5

*Veba-Chemie A.G. v. M/V Getafix*
   711 F.2d 1243 (5th Cir. 1983) ...................................................................................... 11

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:10-cv-160, 2012 U.S. Dist. LEXIS 7569, at *18 (E.D. Tex. Jan. 23, 2012) ...................................................................................... 12

*Williams v. Granite Constr. Co.*
   2009 U.S. Dist. Lexis 10756 at * 1-2 (N.D.Cal. 2009)....................................................... 16

*Zimpelman v. Progressive Northern Ins. Co.*
   2010 U.S. Dist. LEXIS 5582, *7 (N.D. Cal. Jan. 8, 2010) ...................................................... 22

**Statutes**

28 U.S.C. § 1400(b) ............................................................................................................. 3, 4, 8

28 U.S.C. § 1404(a) ................................................................................................................. 10

28 U.S.C. §1391(c) ............................................................................................................... 4, 10

35 U.S.C. § 271(a) ..................................................................................................................... 8

## I.    INTRODUCTION

This lawsuit, a completely California-based dispute, should not be in the Eastern District of Texas. NobelBiz, Inc. ("NobelBiz"), a **California**-based corporation, is suing Five9, Inc. ("Five9"), another **California**-based company.  There are no Texas plaintiffs or defendants.

The choice of venue constitutes inappropriate forum shopping.  Five9 is a Delaware corporation headquartered in San Ramon, California.  It has no offices in Texas, no systematic and continuous contacts with this district, and is not subject to personal jurisdiction here.  In contrast, all of Five9's corporate documents, personnel files, and policies and procedures are housed in California.  The service accused of infringement is provided out of California, and documents related to those services are at its San Ramon headquarters.  Thus, venue in this patent infringement case is improper.

Similarly, NobelBiz has not alleged that it has employees, documents, or witnesses in this District.  On the contrary, they allege that they are also based in California. James Siminoff, the sole named inventor of the patent-in-suit and president of NobelBiz, also resides in California.

Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(3), NobelBiz's complaint against Five9 should be dismissed for improper venue.  In the alternative, pursuant to 28 U.S.C. § 1404(a), the case should be transferred to the Northern District of California, which is a proper venue where the parties, witnesses, documents and activity at issue in the case are present and is clearly more convenient that the Eastern District of Texas.  Under circumstances when the transferee venue is clearly more convenient, a transfer should be ordered irrespective of the plaintiff's choice of venue.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*) (en banc) (rejecting "substantial deference" standard for plaintiff's choice of venue).

Case No. 6:12-CV-00243-LED

Immediately after filing suit in an improper venue, NobelBiz also filed a motion for preliminary injunction that requires significant substantive effort by the court that presides over it, including an analysis of the patent and claim construction and an assessment of the merits of infringement and invalidity. It also may entail discovery, and that discovery would likely all take place in California. Because the court that ultimately presides over the full case should be the one to determine the preliminary injunction motion, Five9 requests that this Court stay any further proceedings regarding that application until Five9's motion to transfer is resolved.

## II.    FACTUAL BACKGROUND

NobelBiz is alleged to be a Delaware corporation with its principal place of business in Carlsbad, California. (Dkt. 1 ¶ 1.) As recognized in the Complaint, Five9 is a Delaware corporation with its principal place of business in San Ramon, California. (Dkt. 1 ¶ 2; *see also* Declaration of David Hill ["Hill Dec."] at ¶ 2.)

NobelBiz filed this lawsuit against Five9 on April 3, 2012.[1] (Compl. [Dkt. No. 1] at 1.) NobelBiz alleges that Five9's "local caller ID management service within its Virtual Call Center services" infringes U.S. Patent No. 8,135,122 (the "Accused Service"). (Dkt. 1 ¶¶ 17, 24.) The asserted '122 patent relates generally to a system, apparatus, and method for processing an outbound call from a calling party in one geographical location to a receiving party in another geographical location, with a caller ID that appears to the receiving party as a telephone number from the receiving party's local geographical region (e.g., area code) substituted in place of the calling party's actual caller ID. (*See generally* Ex. A to Dkt. 1 [copy of '122 patent].)

---

[1] On the same day, NobelBiz filed four separate lawsuits against four other defendants in this Court, none of which is based in Texas: AireSpring, Inc., Global Connect, L.L.C., LiveVox Inc., and T C N, Inc. *See* Compl. 1, *NobelBiz v. AireSpring, Inc.*, No. 6:12-cv-242 (E.D. Tex. Apr. 3, 2012); Compl. 1, *NobelBiz v. Global Connect, L.L.C.*, No. 6:12-cv-244 (E.D. Tex. Apr. 3, 2012); Compl. 1, *NobelBiz v. LiveVox Inc.*, No. 6:12-cv-246 (E.D. Tex. Apr. 3, 2012); Compl. 1, *NobelBiz v. T C N, Inc.*, No. 6:12-cv-247 (E.D. Tex. Apr. 3, 2012).

NobelBiz's complaint alleges that this Court has personal jurisdiction over Five9, and that venue is proper under 28 U.S.C. §§ 1391 and/or 1400(b). (Dkt. 1 ¶¶ 5-6.) NobelBiz alleges no specific facts in support of its venue claim as to Five9, but rather relies on the conclusory assertion that Five9 purportedly infringes "by offering to sell and selling its Five9 Service in the United States, including within this judicial district." (Dkt. 1 ¶ 22.) In reality, Five9 does not have sufficient contacts with the Eastern District of Texas to make this district a proper venue.

Five9 is incorporated in Delaware and headquartered in San Ramon, California, in the Northern District of California. (Hill Dec., ¶ 2.) Five9 has no offices or real estate in the Eastern District of Texas. (*Id.*) Five9 does not own any servers in the Eastern District of Texas. Five9 has no bank accounts in the Eastern District of Texas. (*Id.*) Five9 is unaware of any witnesses or documents related to this lawsuit in the Eastern District of Texas. (*Id.*) More than 85% of Five9's U.S. employees work at Five9's headquarters in the San Ramon, California, including all U.S. engineers and employees with knowledge of technical operations of Five9's systems. (*Id.* ¶ 4.) Five9's executives, including its CEO, its Chief Technology Officer, its Chief Financial Officer, its Vice President of Finance, and its sales and marketing executives work at Five9's headquarters in San Ramon, California. (*Id.*) Five9's U.S. employees involved in or having knowledge regarding the development, operation, sales, and support of the Accused Service work at Five9's headquarters in San Ramon, California. (*Id.*) Five9 has one sales representative working remotely in Plano, Texas, who does not have any unique knowledge about the Accused Service. (*Id.*)

Additionally, all of Five9's corporate documents, personnel files, and policies and procedures are housed in at its California headquarters, including all of Five9's documents and business relating to the development, operation, sales, and support of the Accused Service, to the extent they exist. (*Id.* ¶ 5.) There are no such documents or records located in the Eastern

Case No. 6:12-CV-00243-LED

District of Texas, or anywhere else outside of California. (*Id.*) Five9's main hosting facilities, with the prototypes, routing centers, and servers for the Accused Service, are located in San Jose and Santa Clara, CA, both in the Northern District of California. (*Id.* ¶ 6) Five9 has a back-up facility in New York with no unique documents or physical evidence regarding the Accused Service. (*Id.*) Moreover, Five9 has customers of the Accused Service in California. (*Id.* ¶ 7.) It has no customers of the Accused Service in the Eastern District of Texas. (*Id.*)

Similarly, NobelBiz itself is located not in Texas but in California. (Dkt. 1 ¶ 1.) The president of NobelBiz and sole named inventor resides in California. (*See* Declaration of Robert Harkins ["Harkins Dec."], Ex. 1 [Westlaw records showing residence of James Siminoff in California since 2007] & Ex. 2 [Mr. Siminoff's LinkedIn profile showing him located in California].) NobelBiz has not alleged that any of its relevant witnesses or documents are located in Texas, and presumably those are found at the company's headquarters in California. There is essentially no connection between this district and the Complaint—including the parties themselves and the allegations in the Complaint.

## III.   STATEMENT OF THE ISSUES TO BE DECIDED

There is one issue to be decided by the Court on Five9's motion to dismiss: Was the Complaint filed in an improper venue under Federal Rule of Civil Procedure Rule 12(b)(3) and 28 U.S.C. § 1400(b), warranting dismissal of the action?

If the Court were not to grant that motion, the issues to be decided by the Court in regarding Five9's motions made in the alternative to transfer and stay are as follows:

(1) Should this case be transferred to the Northern District of California?

(2) Should the proceedings regarding NobelBiz's preliminary injunction motion be stayed pending a ruling on the motion to transfer the case?

## IV. ARGUMENT

### A. The Complaint Should Be Dismissed for Improper Venue

NobelBiz's complaint as to Five9 should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue as well as under 28 U.S.C. § 1400(b), which governs venue for patent infringement actions. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1575 (Fed. Cir. 1990) ("[S]ection 1400(b) of chapter 87, title 28, U.S. Code, has set forth the bases for establishing venue in patent infringement actions."). Under § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Five9 does not reside in the Eastern District of Texas because it is not subject to personal jurisdiction there. It is not subject to personal jurisdiction there because the exercise of personal jurisdiction there does not comport with due process, because Five9 does not have minimum contacts with the forum, either under a theory of general jurisdiction or specific jurisdiction. As to the other prong of § 1400(b), Five9 does not have a regular and established place of business in Texas for reasons set forth more fully below, and the patent infringement claim does not arise out of any activity within or relating to the district, also for reasons more fully explained below.

#### 1. Five9 Resides in the Northern District of California, Not in the Eastern District of Texas

Regarding the first prong of § 1400(b), Five9 resides in California, not in Texas. 28 U.S.C. §1391(c) states that for the purposes of venue, a defendant-corporation resides in a judicial district "in which it is subject to personal jurisdiction at the time the action is commenced." *See VE Holding Corp.*, 917 F.2d at 1578 (§ 1391(c) applies to "resides" as used in § 1400(b)).

With respect to personal jurisdiction over defendants in patent infringement cases, Federal Circuit law applies. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). To exercise personal jurisdiction over a defendant in a patent infringement case, there are two relevant inquiries: "the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Id.* at 1349. Texas has a long-arm statute authorizing service of process in accordance with U.S. constitutional due process, *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009) (internal quotations omitted), so the two inquiries collapse into a single question: whether the exercise of personal jurisdiction comports with due process. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230–31 (Fed. Cir. 2010).

The plaintiff bears the burden of showing the court's personal jurisdiction over the defendant. *See Deprenyl Animal Health*, 297 F.3d at 1351. Due process requires a nonresident defendant to have at least "minimum contacts" with the forum to be subject to personal jurisdiction. *Deprenyl Animal Health, 297 F.3d at 1350.* Personal jurisdiction may be general or specific. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

There are two types of personal jurisdiction— general jurisdiction and specific jurisdiction—neither of which is applicable to Five9 in this case.

> **a)    General Personal Jurisdiction Does Not Exist Over Five9 – Five9 Has Not Carried On "Continuous And Systematic General Business Contacts" Within The Eastern District of Texas.**

"General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir. 2000). "[A]ttenuated contacts" are insufficient—rather, the defendant must be "essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2857, 2851 (2011). General

Case No. 6:12-CV-00243-LED

personal jurisdiction over a corporate defendant only exists when the defendant: engages in continuous and systematic contacts with the forum such that it is "essentially at home in the forum." *Goodyear*, 131 S. Ct. at 2851; *see LSI Indus.*, 232 F.3d at 1375. "Sporadic and insubstantial contacts with the forum" will not suffice to establish general jurisdiction, *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009); *see Goodyear*, 131 S. Ct. at 2857.

General personal jurisdiction does not exist over Five9 in the Eastern District of Texas, because Five9 does not engage in continuous and systematic business contacts with the District. Five9 is incorporated in Delaware and headquartered in San Ramon, California. Five9 does not have any offices, bank accounts, or real property in the District. (Hill Dec. ¶ 2.) Five9 has no customers of the Accused Services in the District. (*Id.*) Five9 is unaware of any witnesses or documents related the Accused Service in this district. (*Id.*) Five9 does not own any servers or related equipment in this district. (*Id.* ¶ 7.) Five9's sole sales representative in this district has no office here and no particular knowledge relevant to the Accused Service or the case. (*Id.* 4.)

Thus, Five9 does not have contacts sufficient to establish general jurisdiction. *See* 566 F.3d at 1018. Five9 is "in no sense at home" in the District. *Goodyear*, 131 S. Ct. at 2857.

### b) Specific Personal Jurisdiction Does Not Exist Over Five9.

Specific personal jurisdiction does not exist over Five9 in the Eastern District of Texas. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 2851 (internal quotation marks omitted). Specific personal jurisdiction arises when "the defendant has purposefully directed his activities at residents of the forum" and "the litigation results from alleged injuries that arise out of or relate to those activities," so long as the exercise of personal jurisdiction "would comport with fair play and substantial justice." *Campbell Pet Co. v. Miale,* 542 F.3d 879, 884 (Fed. Cir. 2008) (*quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 476 (1985)); *see also*

*Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1411–12 (Fed. Cir. 2009) (*quoting Hanson v. Denckla,* 357 U.S. 235, 253 (1958)) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum[ ], thus invoking the benefits and protections of its laws.").

In determining whether the exercise of specific personal jurisdiction comports with due process, the Federal Circuit considers "(1) whether the defendant has purposefully directed its activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities." *Campbell Pet*, 542 F.3d at 884 (internal quotation marks omitted); *see also Goodyear,* 131 S. Ct. at 2851 (specific personal jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction"). If the plaintiff carries its burden with respect to both prongs, the court considers "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Campbell Pet*, 542 F.3d at 884, quoting *Burger King,* 471 U.S. at 476. None of these elements are met. Therefore, specific personal jurisdiction does not exist over Five9 in the Eastern District of Texas and exercising such jurisdiction would violate due process. Here, Five9 has not purposely directed its activities to residents of the Eastern District of Texas as opposed to any other location in the United States, and the alleged injuries do not relate to any activities specifically directed toward the Eastern District of Texas.

### 2. Five9 Does Not Have A Regular And Established Place Of Business In This District, and The Alleged Acts Of Infringement Do Not Occur In This District

Under the second prong of § 1400(b), venue is proper only if Five9: (1) has a regular and established place of business in the Eastern District of Texas; *and* (2) committed infringing acts in the District. 28 U.S.C. § 1400(b). Venue is also improper under this test. Five9 does not have a regular and established place of business in the Eastern District of Texas. *See infra.* NobelBiz's patent infringement claim does not arise out of any Five9 activity within or relating to

Case No. 6:12-CV-00243-LED

the District. Patent infringement occurs when a party conducts infringing activity in the United States. 35 U.S.C. § 271(a) (2010); *see also Hollyanne Corp. v. TFT, Inc.*, 199 F.2d 1304, 1308 (Fed. Cir. 1999). As the Federal Circuit has observed, in a patent infringement case, "for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).

Five9 runs its business from its headquarters in San Ramon, using data centers that are located in California and New York. (Hill Dec. ¶¶ 2, 4-6.) It does not have any officers or servers in the Eastern District of Texas, so this district cannot serve as the basis for specific jurisdiction. (*Id.*) Five9 customers may call numbers anywhere in the United States that they desire, but that does not establish any specific connection with this district. They key to venue against Five9 itself is where Five9's activities occur, and those activities are not in this District.

Even if there were specific ties to this district, asserting jurisdiction over Five9 in this case would not comport with fair play and substantial justice and instead would be unreasonable. The Federal Circuit considers five factors in determining reasonableness: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining relief; (4) the judiciary's interest in efficient resolution of controversies; and (5) the interests of all states in furthering social policy. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003). None of these factors weigh in favor of an exercise of jurisdiction.

Holding a trial in the Eastern District of Texas would significantly burden Five9 because it is not located within or near this district. (Hill Dec. ¶ 8.) Five9's operations and employee witness are located outside this district. (*Id.*) Similarly, it appears that NobelBiz's operations, documents and employees (including the sole inventor of the patent-in-suit) are also outside the

district and also are in California.  Thus, this district does not have a strong interest in resolving a claim that does not involve any of the district's other residents, or allegedly infringing activity that did not occur within the District. *Cf. Deprenyl*, 297 F.3d at 1356 (noting that a forum has a "substantial interest in preventing patent infringement *within its borders*") (emphasis added).

NobelBiz cannot show that this Court has as much interest in adjudicating the dispute as the State of California, where both parties, the accused service, the witness and the documents are to be found.  Therefore, it would not be reasonable for this district to exercise jurisdiction over Five9 in this case. Thus, NobelBiz filed this case in an improper venue that does not even have personal jurisdiction over Five9, and the case should be dismissed in favor of the case be re-filed in the Northern District of California.

**B.**      **Alternatively, the Case Should Be Transferred to California**

  **1.**      **The Court Should Exercise Its Authority To Transfer This Case To California**

If it serves the convenience of the parties and witnesses, and if it is consistent with the interests of justice, a court may, in its discretion, transfer an action to any district where the case could have originally been filed.  28 U.S.C. § 1404(a).  Section 1404(a) provides:  "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

An initial question in applying Section 1404(a) is whether the suit could have been brought in the district where the case was filed.  *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*).  Here, as discussed above, the Eastern District of Texas is an improper district for bringing the case.  On that basis, the Court should either dismiss the case, or, in the alternative, transfer it to the Northern District of California, where Five9 is headquartered and

resides. (Hill Dec. ¶ 2.) A patent infringement action may be brought where a defendant resides. *See* 28 U.S.C. §§ 1391(c), 1400(b).

Even if the case *could* have been brought in this district, the Court should transfer the case if the relative conveniences weigh in favor of the case being litigated in another district. The Fifth Circuit holds that transfer may be not only discretionary, but mandatory when a plaintiff chooses an inconvenient venue. "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Volkswagen II,* 545 F.3d at 313 . "In order to obtain a new federal venue, the statute requires only that the transfer be 'for the convenience of the parties, in the interest of justice.'" *Id,* at 314 (*quoting Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983)); *Indus. Tech. Research Inst. v. LG Corp., et al*., Nos. 6:10cv628 LED-JDL, 6:10cv629 LED-JDL, 6:10cv630 LED-JDL, 6:10cv631 LED-JDL 2012, WL 959346, at *2 (E.D. Tex. Feb. 13, 2012); *Optimum Power Solutions, LLC v. Apple, Inc.*, 794 F.Supp.2d 696, 700 (E.D. Tex. 2011), *On Semiconductor Corp., et al., v. Hynix Semiconductor, Inc., et al*., No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010).

In the Fifth Circuit, the applicable law is the same as for motions to dismiss for forum *non* conveniens, but the burden is significantly lower because the result is that the case is not dismissed. *Volkswagen II,* at 314. This is particularly true when the applicable law is federal law such as patent law and not state-specific. The standard for transfer is simply a showing of good cause. *Id,* at 315. The factors weighed in the Fifth Circuit for transfer include private interest factors and public interest factors. *Id.* Here, both the private interest factors and public interest factors support transferring this case to where the parties are. Therefore, if the Court were not to dismiss the case, it should transfer the case to the Northern District of California.

Case No. 6:12-CV-00243-LED

## 2. Private Interest Factors Favor Transfer

In assessing a motion to transfer a patent infringement lawsuit under Section 1404(a), "[t]he private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id. (quoting Volkswagen I*, 545 F.3d at 315); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Here, as discussed above, essentially nothing relevant to the case resides in this district, and essentially everything relevant to the case resides in California. The ease of access to sources of proof favors the case being in the Northern District of California, where relevant servers and offices reside, where possible physical items required for inspection are located, and where all of the witnesses and documents for the defendant are located. (*See* Hill Dec., ¶¶ 2-7.) It is also much closer to the headquarters of NobelBiz, where its president and the sole named inventor of the patent-in-suit resides, where its employees are, where the physical equipment that allegedly practices the patent is likely located, and where its offices and documents are.

### a) The Northern District of California Has Much Greater Access to Primary Sources of Proof

The location of documentary proof and physical evidence strongly weigh in favor of transfer to the Northern District of California. "Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor." *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 U.S. Dist. LEXIS 7575, at *9 (E.D. Tex. Jan. 23, 2012) (citing *Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321); *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:10-cv-160, 2012 U.S. Dist. LEXIS 7569, at *18 (E.D. Tex. Jan. 23, 2012) (same). Courts analyze this factor in light of the distance that documents or other evidence must be transported from their

existing location to the trial venue. *Volkswagen II*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringers. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotation and quotation marks omitted).

Five9's operations are centered in San Ramon, CA and its documentary proof and physical evidence are located in the Northern District of California. (Hill Dec. ¶ 5.) NobelBiz has not alleged that Five9 maintains any documents or physical evidence in the Eastern District of Texas. Furthermore, Plaintiff NobelBiz's headquarters in Carlsbad, CA, where NobelBiz likely maintains its documents and physical evidence, are closer to the Northern District of California than to the Eastern District of Texas. (Dkt. 1 ¶ 1.) Thus, the ease of access factor weighs heavily in favor of transfer.

Transferring venue is even more appropriate in light of NobelBiz's application for preliminary injunction and request for expedited discovery. Resolution of the application and any such discovery will center around Five9's documents and witnesses, as well as the inventor Siminoff, all of whom reside in California. Given NobelBiz's request to accelerate discovery and to seek early injunctive relief long before trial, any discovery and resolution of NobelBiz's preliminary injunction application should plainly occur in the Northern District of California given the hardship and prejudice that will ensue if Five9 were enjoined and early discovery granted.

### b) Availability of Compulsory Process Favors Transfer.

The availability of compulsory process to secure the attendance of witnesses weighs more heavily in favor of transfer when more third party witnesses reside within the transferee venue. *See Volkswagen II*, 545 F.3d at 316. To date, no relevant third party witnesses have been

identified in the Eastern District of Texas.  To the extent any former employees of Five9 may be relevant to this matter, those witnesses will much more likely reside in the Northern District of California.

Further, NobelBiz has also sued two other California companies, LiveVox and AireSpring, for infringing the '122 patent-in-suit or its related parent patent.[2]  These other defendants also reside in California, and are likely to have relevant prior art either of their own accord or gathered to defend against NobelBiz's claims.  Any such third-party witnesses of these other defendants, as well as their documents and prior art, will reside in the California and only be subject to absolute subpoena power in that venue.  As a result, this factor also favors transfer.

   c)  **The Cost of Attendance Factor for Willing Witnesses Favors Transfer.**

Transferring this case to the Northern District of California will materially increase the convenience of prospective witnesses.  "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1343.  As explained by the courts, "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Nintendo,* 589 F.3d at 1198 (quotation and quotation marks omitted).  Accordingly, the Fifth Circuit has found that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.  "Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time.  Thus, regardless of 'straight line' distances,'

---

[2] *NobelBiz v. LiveVox*, Civ. Action No. 6:12-cv-00246 (E.D. Tex.) (Davis, J.) and *NobelBiz v. AireSpring*, Civ. Action. No. 6:12-cv-00242 (E.D. Tex.) (Davis, J.).  Notably, ***none*** of the cases filed in this Court by NobelBiz regarding this patent involves a single party based in Texas.

     Case No. 6:12-CV-00243-LED

if 'travel time' distances favor the transferee venue, then this factor will favor transfer."

*Optimum Power,* 794 F.Supp.2d 696.

Here, Five9's relevant witnesses are located in Northern California, not Texas. (Hill Dec. ¶¶ 2-7.) James Siminoff, the named inventor and president of NobelBiz, resides in California, not Texas. (Exs. 1 & 2 to Declaration of Robert Harkins ["Harkins Dec."].) Five9 is unaware of *any witnesses* that are located in the Eastern District of Texas or for which this District would be more convenient. (Hill Dec. ¶ 6.) Maintaining trial in the Eastern District of Texas would require the prospective witnesses to undergo the significant expenses for travel, meals, and lodging, as well as losses in productivity from time spent away from work. (*Id.*) *See Volkswagen II*, 545 F.3d at 317. These witnesses will suffer the "personal costs associated with being away from work, family, and community." *Id.* These costs would be significantly minimized, if not entirely eliminated, by transferring the case to the Northern District of California.

Additionally, given that the stated intent of the Complaint is to shut down a portion of Five9's business, it is important that company executives are able to attend hearings and trial, which is considerably less disruptive of their business if the venue is in California where the parties are located. (Hill Dec. ¶ 8.)

Transfer to the Northern District of California would be significantly more convenient for Five9, as it is headquartered there. It appears that it would also be more convenient for Plaintiff, as it is also located in California and much closer to the Northern District of California than the Eastern District of Texas. Because plaintiff is based in California, it cannot argue that the Eastern District of Texas is a more convenient forum for it. *See Morales v. Navieras de Puerto Rico*, 713 F. Supp. 711, 173 (D.N.Y. 1989) ("Because plaintiff is a resident of Puerto Rico he does not, nor can he, seriously argue that New York is a more convenient forum than Puerto Rico, especially when none of the operative facts occurred in New York, but rather occurred in

Puerto Rico.").  The fact that the Eastern District of Texas may be convenient to one of plaintiff's two law firms who maintain a law office in this district is not relevant.  "[T]he convenience of the parties' counsel is given little or no weight in the convenience analysis."  17 Moore's Federal Practice, sec. 111.13[e][iii]; *see also, Williams v. Granite Constr. Co.* 2009 U.S. Dist. Lexis 10756 at * 1-2 (N.D.Cal. 2009).

 "A primary factor in determining a section 1404(a) motion to transfer is where the operative facts occurred."  *Morales v. Navieras de Puerto Rico*, 713 F.Supp. 711, 712 (S.D.N.Y. 1989).  Here, the allegedly infringing activity (call processing and local number assignment) does not take place in Texas.  The allegedly activity is centered at Five9, which is based in San Ramon, in the Northern District of California.  Thus, this factor strongly weighs in favor of transfer.  *See TS Tech*, 551 F.3d at 1320; *Genentech*, 556 F.3d at 1345.

### d)     Judicial Economy is Neutral to the Transfer Analysis.

The co-pending lawsuits do not balance against transfer based upon judicial economy.  In determining whether a transfer is in the interest of justice, courts will also take into account judicial economy.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*).  Judicial economy is achieved "where a court has become familiar with the technical subject matter by presiding over previous cases."  *Sipco, LLC v. Control4 Corp*, No. 6:10-cv-249, 2011 U.S. Dist. LEXIS 12435, at *6 (E.D. Tex. Feb. 8, 2011).  "A co-pending suit in its infancy, however, does not increase the Court's familiarity with the patents-in-suit and therefore does not implicate judicial economy."  *Innovative Global Sys. LLC v. Onstar, LLC, et al.*, No. 6:10-cv-574, slip op. at 12 (E.D. Tex. Feb. 14, 2012).

Here, the instant case and four other co-pending cases were all filed within the last two months, are in their infancy and have not yet had scheduling conferences.[3] "As such, the Court is not familiar with the technology at issue to the extent necessary to facilitate judicial economy." *Sipco*, 2011 U.S. Dist. LEXIS 12435, at *12–13 (finding that previous suits in the same Court did not weigh against transfer because in one case the Court had not construed the claims and another case was "in its infancy and yet to have a scheduling conference"); *Innovative Global Sys.*, slip op. at 12 ("The existence of co-pending litigation in the transferor forum is relevant to the extent that it facilitates judicial economy."). As already discussed, two of the other defendants, Five9 and AireSpring, are located in California and likely to be transferred there as well for similar reasons. Therefore, judicial economy is either neutral, or else slightly favors transfer if these other California defendants and their related cases are also transferred.

### 3. The Public Factors Favor Transfer to the Northern District of California

In assessing a motion to transfer a patent infringement lawsuit under Section 1404(a), the public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, at 315. No one factor is dispositive, and others may be considered. *Id.* On the whole, the factors clearly weigh in favor of transfer from this Court to the Northern District of California.

When two California-based companies are fighting over technology based and deployed in California, California has a greater interest in the particulars of this case. The other public factors discussed in *Volkswagen II* are neutral – the court docket is similar in both courts, both

---

[3] For the similar reasons, the venue for at least two of these cases are inconvenient for the two California defendants: AireSpring, Inc. and Five9 Inc. *See* Compl. ¶ 2, *NobelBiz v. AireSpring, Inc.*, No. 6:12-cv-242 (E.D. Tex. Apr. 3, 2012); Compl. ¶ 2, *NobelBiz v. Five9 Inc.*, No. 6:12-cv-246 (E.D. Tex. Apr. 3, 2012).

courts have extensive familiarity with patent law, and there is no conflict of law or foreign law issue presented in a purely federal law case.[4]  That is particularly true when no court yet has established experience with the patent at issue in this case.  Because both parties are headquartered in California, the public factors clearly favor transferring the case there.

a)  **California Has a Strong Local Interest, Favoring Transfer of the Case**

A glance at the pleading clearly establishes that this case belongs in California, not Texas.  The only two parties in the case reside in California.  No parties reside in Texas, and no special relationship to Texas is pled anywhere in the Complaint.

The Eastern District of Texas has no particularized local interest in adjudicating this case. "If the products were sold throughout the United States . . . then the citizens of the venue chosen by the plaintiff 'have no more or less of a meaningful connection to the case than any other venue.'"  *Nintendo*, 589 F.3d at 1198.  Considering that neither of the parties reside in Texas, the only other connection between the Eastern District of Texas and this case is that Defendant allegedly sold the Accused Service there; therefore, the District chosen by NobelBiz has no more or less of a meaningful connection to this case than any other venue.  *See id.*; *TS Tech*, 551 F.3d at 1321 (finding that a district court had "no meaningful ties to [a] case" when none of the parties or party witnesses resided within that district).

In contrast, the citizens of the Northern District of California have a far greater interest in adjudicating this dispute than those of this District.  "While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are

---

[4] NobelBiz may argue that maintaining the case in this district has some efficiency over transfer not because of any facts related to this case, but rather on the basis that it has also sued other companies in other cases in this court regarding the same patent or patent family. However, that does not weigh toward maintaining a case in a district with no ties to the matter at hand.  In fact, ***none*** of the NobelBiz lawsuits as of the date of this filing involve any Texas entities, whereas ***all*** of them involve at least one California-based entity and approximately half of them involve ***only*** California-based entities.

significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations omitted). The Northern District of California has an obvious connection and substantial local interest in adjudicating this case because Five9 is based in the Northern District of California with its offices, facilities, and employees involved in the development, operation, sales, and support of the Accused Service located there. *See id.* at 1336; *TS Tech*, 551 F.3d at 1321. Moreover, "because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community," the Northern District of California's local interest is particularly strong. *Hoffmann*, 587 F.3d at 1336. As a result, this factor strongly favors transfer.

### b) The Remaining Public Factors Are Neutral

Other than local interest, the other enumerated factors in *Volkswagen II* include administrative difficulties from court congestion, familiary with the law governing the case (here patent law), and avoidance with conflict of laws or application of foreign law. *See Volkswagen II,* at 315. In each of these respects, Eastern District of Texas is similarly situated to the Northern District of California, so the factors on the whole are neutral.

Regarding court congestion or speed to trial, the reported time to disposition of civil cases is slightly shorter right now in the Northern District of California at 25.4 months than the Eastern District of Texas at 26.1 months.[5] Thus, the timing is similar or slightly weighs in favor of transfer to the Northern District of California.

This suit involves federal patent law, and both the Northern District of California and the Eastern District of Texas are experienced patent law courts. Therefore, this factor is neutral. *See*

---

[5]   Table C-5 of Judicial Business of the United States Courts, 2011 Annual Report of the Director, at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011/appendices/ C05Sep11.pdf (Ex. 3 to Harkins Dec.).

*TS Tech*, 551 F.3d at 1320 ("The district court was further correct in concluding that it was in no better position than the Southern District of Ohio in deciding this patent case"). And, because federal patent laws are statutory and all substantive decisions under these laws are reviewed by the Federal Circuit, there is no conflicts of law issue. Thus, these public interest factors are neutral.

In prior orders, this Court has relied on the judicial economy factor to retain cases in the Eastern District of Texas, however, in these cases the Court was already familiar with the patent and parties due to previous litigation. In *Colorquick, LLC v. Vistaprint Ltd. et al.*, No. 6:09-cv-323, 2010 WL 5136050, at *7 (E.D. Tex. July 22, 2010), the Court noted it had substantial experience with the same patent in a prior case. Accordingly, the Court concluded judicial economy would be achieved by retaining the case. *Id.* Similarly, in *Realtime Data, LLC v. Morgan Stanley, et al.*, Nos. 6:09cv326-LED-JDL, 6:09-cv327-LED-JDL, 6:09cv333-LED-JDL, 2010 WL 4274576, at *3-5 (E.D. Tex. Oct. 28, 2010), the Court previously adjudicated several cases to completion involving the same plaintiff, same patent, and similar infringement claims, and ultimately decided to retain the case. *Id.*

Here, the cases have just been filed, and the Court does not have any previous experience adjudicating similar lawsuits involving this patent or plaintiff. Although other lawsuits have been filed by the same plaintiff, each of these cases involves a different defendant. All of these pending cases are still in their infancy stages. This Court has previously relied on more than simply pending lawsuits in their infancy stages to retain a case to maximize judicial economy.

Additionally, judicial economy would not support retention of a case where convenience of the parties and witnesses favors transfer, as in this case. *See In re Zimmer Holdings, Inc.*, 809 F.3d 1378, 1382 (Fed. Cir. 2010). In *Zimmer*, the Federal Circuit transferred a case because the convenience factors favored transfer despite judicial economy considerations favoring retaining

the case.  *Id*. at 1379.  In *Zimmer*, a similar case against a different defendant was pending in the same Court and involved similar issues, but the Federal Circuit concluded transfer was appropriate because the other pending case was in its infancy stages and distinct from the case at issue.  *Id*. at 1382.  Here, none of the NobelBiz patent cases has any history yet in this Court, so judicial economy is a neutral point and the other factors favor transfer.

Therefore, because the balance of public factors, and all private factors, favor transfer, the Court should transfer this case to the Northern District of California.

### 4. No Deference Should Be Given To Plaintiff's Choice Of Forum When, As Here, the Suit is Not Filed in the Plaintiff's Residence

Deference to plaintiff's choice of forum is "substantially attenuated" where plaintiff has commenced the action in a forum that is not his or her residence.  In such cases, plaintiff's choice of forum is given much less weight in ruling on a discretionary transfer motion.  *New Image, Inc. v. Travelers Indem. Co.*, 536 F.Supp. 478 (E.D. Pa. 1981); *Optimum Power*.  Here, plaintiff is a resident of California, not Texas.[6]  As a result, the plaintiff's forum choice in the Eastern District of Texas carries no weight on whether to transfer the action.

> In judging the weight to be given [to plaintiff's choice of forum] ... consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to [plaintiff's] cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is only entitled to minimal consideration.

---

[6] Plaintiff fails to plead any real connection at all to this district in its complaint.  In a subsequent motion for preliminary injunction, NobelBiz alleged without supporting evidence that it "maintains a business office in this district, which, along with its other offices around the country, serves its clientele throughout Texas and the southwestern United States." (Mtn. Prelim. Inj., at 2.)  This statement, which has no evidentiary support, glosses over the issue of whether this office has any actual operation that may be relevant.  On the contrary, the brief suggests that there is nothing particularly relevant about the business office and that it is no more relevant than any other of its offices "around the country," whereas obviously NobelBiz is headquartered in California, which is highly relevant to the issue of where the venue should exist for the case.

*Zimpelman v. Progressive Northern Ins. Co.*, 2010 U.S. Dist. LEXIS 5582, *7 (N.D. Cal. Jan. 8, 2010), *citing Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). None of the operative facts occurred in the Eastern District of Texas; thus, this district has no interest in the subject matter of the complaint.

**5.     Plaintiff's Attempt To Forum Shop Should Not Succeed**

An important "interest of justice" factor is the prevention of forum shopping. The transfer statute has a built-in mechanism to remedy the evils of forum shopping by giving little or no weight to the plaintiff's choice of forum away from the plaintiff's home and without ties to the controversy. *See, O'Hopp v. Contifinancial Corp*, 88 F.Supp.2d 31, 36 (E.D.N.Y. 2000) (holding that forum shopping clearly motivated the choice of filing the suit in the Eastern District, because the case had far more connections to the Southern District; and that the need for consistency of rulings and trial coordination, as well as the interest of efficiency and justice, militated in favor of transfer); *see also Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 54, fn. 12 (D.D.C. 2000) (choice of venue disregarded when it was apparent plaintiff was engaged in forum shopping and the alternative venue was equally convenient). NobelBiz should not be permitted to forum shop here, where the district is far away from the matters giving rise to the dispute, and the offices of both parties are in California.

**V.     THE COURT SHOULD STAY NOBELBIZ'S APPLICATION FOR PRELIMINARY INJUNCTION**

Two days after filing the complaint, NobelBiz also filed an application for preliminary injunction. The court that presides over the application will need to devote significant substantive work to the case, including an analysis of the patent and claim construction and an assessment of the merits of infringement and invalidity. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009).

Five9 does not infringe the asserted patent, and it is not attempting to avoid responding to preliminary injunction motion. On the contrary, it is prepared to file its opposition. But Five9 believes that if this Court is dismissing or transferring the case, as it should, there is no purpose served in taking the time and energy to analyze the application. Moreover, the court that ultimately presides over the full case should be the one to determine the preliminary injunction motion. Five9 requests that this Court stay any further proceedings regarding that application until Five9's motion to dismiss or transfer is resolved.

## VI.   CONCLUSION

For the foregoing reasons, the case should be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. In the alternative, the case should be transferred to the Northern District of California. Also, pending a ruling on this motion, proceedings regarding NobelBiz's application for preliminary injunction should be stayed.

Respectfully Submitted,

By: */s/ Robert Harkins*
    E. PAUL CAULEY, JR.
    State Bar No. 04018900
    Email:  paul.cauley@sedgwicklaw.com
    FAVAD R. BAJARIA
    State Bar No. 24073042
    Email:  favad.bajaria@sedgwicklaw.com
    **SEDGWICK LLP**
    1717 Main Street, Suite 5400
    Dallas, TX 75201-7367
    Telephone: (469) 227-8200
    Facsimile: (469) 227-8004

    ROBERT HARKINS
    California State Bar No. 179525
    Email:  robert.harkins@sedgwicklaw.com
    **SEDGWICK LLP**
    333 Bush St., 30th Fl.
    San Ramon, California 94105
    Telephone: (415) 781-7900
    Facsimile: (415) 781-2635
ATTORNEYS FOR DEFENDANT
FIVE9 INC.

Case No. 6:12-CV-00243-LED

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on May 24, 2012 pursuant to Local Rule CV-5(a) and has been served on all counsel who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a)(3)(A).

By: */s/Robert Harkins*
Robert Harkins


## CERTIFICATE OF CONFERENCE

I hereby certify that I am lead counsel for LiveVox, Inc. in this action.  On May 24, 2012, I conferred by telephone with Ralph Dengler, counsel for Plaintiff NobelBiz, Inc., regarding the present Motion. Plaintiffs' counsel stated he was opposed to the relief requested in this Motion, as Plaintiff disagrees that the case should be dismissed or transferred to another district.  As a result, the subject of the motion is at an impasse, leaving an open issue for the court to resolve.


By: */s/Robert Harkins*
Robert Harkins

SF/2731157v2